**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| STRUCTURAL IRON WORKERS LOCAL NO. 1 PENSION FUND, | ) ) ) |
| Plaintiff, | ) CASE NO.: 20-CV-6473 ) |
| vs. | ) JUDGE: ) |
| POLSTEEL CONSTRUCTION, LTD., an Illinois company, and WACLAW SAGAN a/k/a WES SAGAN, an individual, | ) MAGISTRATE JUDGE: ) ) ) ) |
| Defendants. | ) |

**COMPLAINT**

NOW COMES the Plaintiff, the STRUCTURAL IRON WORKERS LOCAL NO. 1 PENSION FUND, by and through its attorneys, JOHNSON & KROL, LLC, complaining of the Defendants POLSTEEL CONSTRUCTION, LTD. and WACLAW SAGAN a/k/a WES SAGAN, and alleges as follows:

**JURISDICTION AND VENUE**

1. This action arises under Sections 502 and 515 of the Employee Retirement Income Security Act (hereinafter referred to as "ERISA") (29 U.S.C. §§ 1132 and 1145) and Section 301 of the Labor-Management Relations Act. (29 U.S.C. § 185). The Court has jurisdiction over the subject matter of this action pursuant to 29 U.S.C. §§ 185(c), 1132(e)(1), and 1145, as well as 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 29 U.S.C. § 1132(e)(2) in that the STRUCTURAL IRON WORKERS LOCAL NO. 1 PENSION FUND ("PENSION FUND"), the Structural Iron Workers Local No. 1 Welfare Fund, the Structural Iron Workers Local No. 1 Annuity Fund, the Apprenticeship Training and Journeyman's Retraining Fund, the National I.W.

Apprenticeship Fund, and the Local No. 1 Scholarship Fund (collectively, the "Trust Funds") are administered at 7700 Industrial Drive, Forest Park, Illinois 60130, and pursuant to 28 U.S.C. §1391(b)(2) in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Northern District of Illinois, Eastern Division.

## PARTIES

3. The Trust Funds receive contributions from numerous employers pursuant to collective bargaining agreements between employers and the Local Union No. 1 of the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers ("Union") and, therefore, are multiemployer plans under 29 U.S.C. § 1002.

4. The Trust Funds were established and are administered pursuant to the terms and provisions of certain Agreements and Declarations of Trust (the "Trust Agreements").

5. The PENSION FUND is required to receive, hold, and manage all monies required to be contributed to the Trust Funds and is the authorized collection agent under the Principal Agreement and Trust Agreements for contributions and deductions to the Trust Funds and Union required under the Principal Agreement.

6. Pursuant to 29 U.S.C. §1132(a)(3), the PENSION FUND is authorized to bring this action on behalf of its participants and beneficiaries for the purpose of collecting unpaid contributions and wages.

7. The Union is the bargaining representative of the Defendant POLSTEEL CONSTRUCTION, LTD. ("POLSTEEL")'s bargaining unit employees.

8. POLSTEEL is an Illinois company with its principal place of business located in Addison, Illinois.

9. The Defendant WACLAW SAGAN a/k/a WES SAGAN ("SAGAN") is the President and

owner of POLSTEEL.

## FACTS COMMON TO ALL COUNTS

10. Over the past several years, POLSTEEL has entered into a series of Memorandum of Agreements wherein it agree to be bound by the provisions of the Principal Agreement for specific projects within the Union's geographic jurisdiction. (Copies of the Memorandums of Agreement are attached as **Exhibit 1**); (a copy of the Principal Agreement is attached as **Exhibit 2**).

11. Through the agreements referred to in Paragraph 10, POLSTEEL also became bound by the provisions of the Trust Agreements.

12. Pursuant to the provisions of the Principal Agreement and Trust Agreements, POLSTEEL is required to make monthly reports of hours worked by covered employees and pay contributions to the Trust Funds at the negotiated rate.

13. The monthly reports and contributions during all times relevant were due on or before the fifteenth (15th) day of the calendar month following the calendar month during which the work was performed.

14. Pursuant to Section 502(g)(2) of ERISA, the Principal Agreement and Trust Agreements, employers who fail to submit their monthly contribution reports and contributions to the Trust Funds on a timely basis are responsible for the payment of liquidated damages at a rate of twenty percent (20%) of the amount unpaid and interest at the rate of prime plus two percent (2%) per month for each month that contributions remain unpaid, plus any reasonable attorney's fees and costs of maintaining suit.

15. Pursuant to the Principal Agreement, POLSTEEL is required to deduct union wage assessments ("union dues") from its covered employees' paychecks and remit payment of

those union dues to the Pension Fund, as the collection agent for the Union.

16. Pursuant to the Principal Agreement, POLSTEEL is required to deduct $4.00 per hour of post-tax wages as a vacation account deduction from its covered employees' paychecks and remit payment of those vacation account deductions to the Pension Fund.

17. Pursuant to the Principal Agreement, employers who are found to be delinquent through an audit are obligated to pay the full cost of the audit if the delinquencies exceed $2,500.00.

18. In or around March 2018, POLSTEEL hired JR Brys ("Brys") to be its "working foreman."

19. When Brys was hired by POLSTEEL, SAGAN informed Brys that POLSTEEL would pay wages and fringe benefits at the rates negotiated between the Union and the Associated Steel Erectors of Chicago in the Principal Agreement for all work he performed.

20. In addition, when Brys was hired as the working foreman, SAGAN expressly authorized Brys to hire union ironworkers to perform the work on behalf of POLSTEEL.

21. SAGAN further represented to Brys that POLSTEEL would pay wages and fringe benefits at the rates agreed to in the Principal Agreement for all union ironworkers that Brys hired for all of the work they performed.

22. SAGAN would routinely inform Brys that POLSTEEL had obtained work that would require additional union ironworkers. Based on the authority that SAGAN had previously given to Brys, Brys would then contact union ironworkers and hire them under the pretense that the union ironworkers would be paid full wages and POLSTEEL would pay all of the fringe benefits at the rates agreed to in the Principal Agreement.

23. Regardless of the project on which Brys and the union ironworkers Brys hired on behalf of POLSTEEL, POLSTEEL deducted union dues from Brys and the union ironworkers' wages.

24. Regardless of the project on which Brys and the union ironworkers Brys hired on behalf of POLSTEEL, POLSTEEL deducted the vacation account deduction from Brys and the union ironworkers' wages.

25. For all hours worked Brys and the union ironworkers Brys hired on behalf of POLSTEEL, POLSTEEL paid wages at the rate required by the Principal Agreement.

26. By its conduct, POLSTEEL bound itself fully to the terms of the Principal Agreement for all work covered by the Principal Agreement, and not just those specified in the Memorandums of Agreement.

## COUNT I
## BREACH OF THE PRINCIPAL AGREEMENT

27. Plaintiff re-alleges and incorporate the allegations contained in Paragraphs 1-26 of this Complaint with the same force and effect as if fully set forth herein.

28. The Trust Funds' auditors recently conducted a payroll compliance audit for the period of July 1, 2018 through February 29, 2020.

29. The payroll compliance audit revealed that POLSTEEL owes the Trust Funds the aggregate amount of $28,671.50 in unpaid contributions.

30. The payroll compliance audit also revealed that POLSTEEL owes the Union the aggregate amount of $4,232.49 in unpaid dues and vacation savings.

31. As a result of POLSTEEL's failure to pay its contributions and dues to the Trust Funds and Union in a timely manner for the period of July 1, 2018 through February 29, 2020, POLSTEEL owes liquidated damages and interest in the aggregate amount of $9,009.65.

32. POLSTEEL is obligated to pay $1,260.25 in auditor's fees incurred by the Trust Funds to complete the payroll compliance audit.

33. By its conduct, POLSTEEL bound itself fully to the terms of the Principal Agreement for

all work covered by the Principal Agreement, and not just those specified in the Memorandums of Agreement.

34. POLSTEEL has a continuing obligation to contribute to the Trust Funds.

35. Plaintiff has been required to employ the undersigned attorneys to collect the monies that are owed to the Trust Funds.

36. Plaintiff has complied with all conditions precedent in bringing this suit.

37. POLSTEEL is obligated to pay the reasonable attorney's fees and court costs incurred by Plaintiff pursuant to the Principal Agreement, Trust Agreements, and 29 U.S.C. § 1132(g)(2)(D).

**WHEREFORE**, Plaintiff respectfully requests:

A. That the Court issue an order holding that the Defendant POLSTEEL, by its conduct, has bound itself to the Principal Agreement;

B. That Judgment be entered in favor of Plaintiff and against Defendant POLSTEEL in the aggregate amount of $43,173.89, itemized as follows:

   i. $28,671.50 for unpaid contributions owed for the period of July 1, 2018 through February 29, 2020;

   ii. $4,232.49 in unpaid dues and vacation savings owed for the period of July 1, 2018 through February 29, 2020;

   iii. $9,009.65 for liquidated damages and interest owed for the period of July 1, 2018 through February 29, 2020; and

   iv. $1,260.25 in audit fees owed for the audit conducted for the period of July 1, 2018 through February 29, 2020;

C. That Judgment be entered in favor of Plaintiff and against Defendant POLSTEEL for any

        other contributions, union dues, vacation deductions, wages, liquidated damages and interest that are found to be due and owing in addition to the amounts identified by paragraph B above;

D.      That Defendant POLSTEEL be ordered to pay the reasonable attorney's fees and costs incurred by the Plaintiff pursuant to the Principal Agreement, Trust Agreements, and 29 U.S.C. §1132(g)(2)(D); and

E.      That Plaintiff has such other and further relief as the Court may deem just and equitable all at the Defendant POLSTEEL's cost, pursuant to 29 U.S.C. §1132(g)(2)(E).

## COUNT II
## BREACH OF THE INSTALLMENT PAYMENT AGREEMENT

38.     Plaintiffs re-allege and incorporate the allegations contained in paragraphs 1-37 of this Complaint with the same force and effect as if fully set forth herein.

39.     As of February 19, 2020, Defendants POLSTEEL and SAGAN entered into an Installment Payment Agreement with the Trust Funds. (A copy of the Installment Payment Agreement is attached as **Exhibit 3**).

40.     Through the Installment Payment Agreement, SAGAN agreed to be personally liable for any of POLSTEEL's "audit fees and audit deficiencies that may become due and owing during the duration of this Agreement." (**Exhibit 3**).

41.     SAGAN is personally liable for POLSTEEL's audit deficiencies that became due and owing during the Agreement.

42.     On March 4, 2020, the Trust Funds' auditors conducted a payroll compliance audit of POLSTEEL's payroll records for the period of July 1, 2018 through February 29, 2020.

43.     On April 2, 2020, the Trust Funds' auditors finalized a report detailing the results of the payroll compliance audit.

44. On May 19, 2020, the Trust Funds demanded that POLSTEEL and SAGAN remit payment of the contributions, dues and vacation savings deductions, along with the resulting liquidated damages, interest and audit fees, revealed by payroll compliance audit, in the aggregate amount of $43,173.89, itemized as follows:

    i. $28,671.50 for unpaid contributions owed for the period of July 1, 2018 through February 29, 2020;

    ii. $4,232.49 in unpaid dues and vacation savings deductions owed for the period of July 1, 2018 through February 29, 2020;

    iii. $9,009.65 for liquidated damages and interest owed for the period of July 1, 2018 through February 29, 2020; and

    iv. $1,260.25 in audit fees owed for the audit conducted for the period of July 1, 2018 through February 29, 2020;

45. The Installment Payment Agreement also provides that "in the event the Trust Funds are required to engage an attorney to collect any amounts due under this Agreement, Polsteel and Sagan shall be liable for all reasonable attorneys' fees and costs incurred by the Trust Funds." (**Exhibit 3**).

46. Under the Installment Payment Agreement, SAGAN is personally liable for any ongoing contribution obligations of POLSTEEL. As a result, SAGAN may be liable for additional contributions and the resulting liquidated damages and interest that may become due from POLSTEEL.

**WHEREFORE**, Plaintiff respectfully requests:

A. That Judgment be entered in favor of Plaintiff and against Defendant SAGAN in the

aggregate amount of $43,173.89, itemized as follows:

    i.    $28,671.50 for unpaid contributions owed for the period of July 1, 2018 through February 29, 2020;

    ii.    $4,232.49 in unpaid dues and vacation savings deductions owed for the period of July 1, 2018 through February 29, 2020;

    iii.    $9,009.65 for liquidated damages and interest owed for the period of July 1, 2018 through February 29, 2020; and

    iv.    $1,260.25 in audit fees owed for the audit conducted for the period of July 1, 2018 through February 29, 2020;

B.    That Judgment be entered in favor of Plaintiff and against Defendant SAGAN for any other contributions, dues, vacation savings deductions, liquidated damages and interest that are found to be due and owing in addition to the amounts referenced in Paragraph A above;

C.    That Defendant SAGAN be ordered to pay the reasonable attorneys' fees and costs incurred by the Plaintiffs pursuant to the Installment Payment Agreements, the CBA, Trust Agreements and 29 U.S.C. § 1132(g)(2)(D); and

D.    That Plaintiff have such other and further relief as the Court may deem just and equitable all at the Defendant SAGAN's cost, pursuant to 29 U.S.C. § 1132(g)(2)(E).

Respectfully Submitted,

**STRUCTURAL IRON WORKERS LOCAL NO. 1 PENSION FUND**

Lucas J. Habeeb - 6329755
One of Plaintiff's Attorneys